## Albert Ives and another v. Patrick Tregent.

*Bankruptcy : Assignees' sale : Trover : State courts : Jurisdiction.* A purchaser at a sale of a bankrupt's effects, made by the assignees, may bring trover in the state court on a refusal by the assignees to make delivery, in a case where the bankrupt court has not been invoked in the matter and has taken no action towards setting aside the sale.

*Officer of court : Receiver : Assignee in bankruptcy : Sales : Trover.* An officer of court having authority to make a sale, a receiver or assignee in bankruptcy, for instance, is liable in trover, if he actually makes a sale and subsequently refuses to deliver the property sold.

*Assignees' sales : Bankruptcy court : Jurisdiction : State courts.* Assuming that the bankruptcy court has power to set aside sales by assignees, an application to that court for that purpose, or an order setting aside the sale, would be a complete defense to such action of trover.

*Evidence : Explanations : Leading questions.* A party who, on a second trial, has testified as a witness to a fact in his favor, which, it is shown on cross-examination, he did not mention while a witness on the first trial, has a right in explanation to give the reason, on redirect examination, for his failure to testify to such fact on the former trial, and perhaps to state any fact which would support and verify his explanation ; but leading questions on the subject are objectionable.

*Auction sales : Bids : Mistake : Evidence : Bystander.* In such an action where the defense is that the assignees misunderstood the price claimed to have been bid at a sale by them at public auction, evidence of a bystander who bid on the same property and other of the same kind, as to his understanding of the price bid by the plaintiff and by witness himself, is competent.

*Assignees in bankruptcy : Auctioneers : Agency : Auction sales.* Assignees in bankruptcy who have employed an auctioneer to make sale of the assets of the estate and have put him in charge, must be understood as authorizing him to speak for them ; and when he accepts a bid and knocks down the property a bargain is closed.

*Auction sales : Assignees in bankruptcy : Inattention : Mistake.* Where, at such a sale, the bids are understood by the bystanders and by the auctioneer when he accepts them, the fact that the assignees are present and through inattention misapprehend them, does not render the sale ineffectual, and is no excuse for refusing to carry it out.

*Heard April 29.    Decided July 8.*

Error to the Superior Court of Detroit.

*Wilkinson & Post* and *Pond & Brown,* for plaintiffs in error.

*William Jennison,* for defendant in error.

Cooley, J.

The plaintiffs in error are assignees in bankruptcy of

Robert Hosie, and were sued in trover by Tregent for the conversion of certain shares of stock in the Kellogg bridge company, of Buffalo, N. Y., which he claimed to have purchased of them at a public sale made of the effects of said bankrupt. The suit appears to have grown out of a misunderstanding, real or pretended, between Tregent and the assignees, regarding the price at which the shares were struck off to him; Tregent claiming that it was eleven cents a share, while Ives, who was present at the sale, insists that he understood it to be eleven dollars a share, and refused to deliver the certificates on a tender of the less sum.

At the conclusion of the evidence in the court below, the point was made by the defense that the bankrupt court had exclusive jurisdiction of the subject matter of the suit, and the judge was requested to instruct the jury that the plaintiff's remedy for a refusal to deliver the certificates was by application to the bankrupt court, and not by action. As it was not shown that the bankrupt court had ever taken any action on the subject of the sale, or that the sale had ever been brought to its attention in any manner, the question presented by the request for the instruction, would seem to be the broad one, whether in any case the assignee of a bankrupt could be sued at law, for the conversion of property of which he had made sale as such assignee, but of which he refused to transfer the possession. The reasons suggested on the argument why the assignee should not be liable in an action at law, were, *first*, that he is a mere officer of the court, similar in all respects to a receiver; and *second*, that the bankrupt court assumes the power to set aside sales made by the assignee and might have set aside this, leaving the assignee remediless if this suit is maintainable. The first reason does not seem to us very conclusive, for we suppose an officer of court may be liable to such an action if, having authority to make a sale, he actually makes one, but subsequently refuses to deliver the property sold. When the purchaser has acquired

a right to the property, its conversion by the officer, instead of being an official act, would be a mere personal tort, for which he would be liable, without regard to his official character, as any third person might be who should take possession of the property and appropriate it to his own use.

The second ground would be conclusive on the assumption that the bankrupt court had the necessary power and had actually set aside the sale, or had taken the matter under advisement on an application for that purpose, or probably, if the proceedings or the sale had been reported for its advice or action, on a dispute arising regarding its terms.     But nothing of that nature appears in this case. The action of that court has not, so far as the evidence shows, in any manner been invoked as regards the sale, and the subject is not actually or constructively before it in any manner, unless all sales by an assignee are to be considered inchoate and open until the judge in bankruptcy has passed upon and approved them.     But we do not understand it to be the practice of that court to require such sales to be reported for confirmation; and in the absence of such a requirement they must be considered as complete when the formalities necessary to effect a sale in other cases have been gone through with.     If that court takes action upon them at all, we understand it to be only when in special cases its interposition is invoked.

Several errors are assigned on the admission and rejection of evidence.     The first which is noticed in the brief relates to a question put by the counsel for the plaintiff to the plaintiff himself, when on the stand as a witness.     The case had been once tried before, and the plaintiff, being then a witness, had said nothing of a certain conversation with the assignee Ives to which he now testified, in which Ives, as he says, told him he had got the shares cheap.     This fact being now brought out on cross-examination, the plaintiff's counsel put to him on re-examination the following question: " In the court room here, at the close of the

last trial, did you not tell me you had forgotten to state Mr. Ives had that conversation with you and told you you had got them cheap?" This question was allowed, and the plaintiff answered: "I told you that, my impression is, while the jury was out." Now, the witness was entitled to give the reason for failing to testify to this conversation with Ives on the former trial, and perhaps to state any fact which would support and verify his explanation, but the question put to him was leading in form, and objectionable on that ground. It did not merely call his attention to an occurrence, but it put into his mouth the very words he was desired to testify to; and this was especially objectionable, because the question was addressed to the plaintiff himself, who might reasonably be supposed ready to testify to the facts which were brought out, without such explicit and suggestive prompting.

We also think the court erred in excluding the testimony of the witness Wheaton to his understanding of the plaintiff's bid, and to the price bid by himself for other shares of the same stock at the same time. Such evidence would not necessarily conclude the plaintiff, but it had an important bearing on the question whether a sale was made to him at the price he claimed. The plaintiff insists upon a purchase at one price, while the defendants claim that the sale was made at a price a hundred times higher, and in the attempt to reach the exact facts between claims so widely different, regarding a sale made at public auction, the understanding of other persons present at the sale for the purpose of bidding is of the highest importance. The question is whether a sale is made at a certain price; and its solution depends upon the bids which were made and the acceptance of the highest. The plaintiff claims to have bid a certain sum, and that this was accepted by the auctioneer with full understanding on the part of the defendant Ives, or if Ives did not understand it, that it was by reason of his inattention or negligence. On his own theory of the case, therefore, it is important to know how

29 MICH.—50.

bystanders who were present as bidders understood the biddings; for the defendants could not reasonably be charged with such inattention and negligence as should bind them to a contract they never intended to assent to, if other persons who had an interest in watching the bids were equally mistaken.

The question whether the sale was valid if the shares were in fact struck off to the plaintiff for eleven cents each, notwithstanding Ives in consequence of his negligence and inattention understood the bid to be eleven dollars, was ruled against the defendants in the court below. With some hesitation we have reached the conclusion that this ruling was correct. The assignees had put an auctioneer in charge of the sale, and must be understood to authorize him to speak for them. When he accepts a bid and knocks down the property a bargain is closed. The presence of an assignee was not necessary to the validity of the sale, and the fact that Ives was there on this occasion was consequently immaterial. If he had been absent the assignees would have been concluded, and they must be equally so if present, provided the sale was fairly made and the bids understood by the bystanders and the auctioneer. The auctioneer speaks for his principals, and is supposed to express their minds where he gives consent by the acceptance of the bid. Had the bids been vague, uncertain, ambiguous, or for any other reason had Ives when properly attending to the sale, been misled as to the offers which were being made, the assignees might have been justified in refusing to carry the sale into effect, because in such a case it is a reasonable inference that bystanders may have been misled in like manner, and one of the elements to a valid sale at auction will be wanting. Such a sale is supposed to be made with full understanding between auctioneer and bidders, and when such is not the case intelligent competition, which auction sales are supposed to invite, cannot be had. But if such full understanding exists between bidders and auctioneer, we are inclined to agree with the

court below, that the assignee who was present at the sale cannot assign his own inattention and consequent misapprehension as a reason for avoiding it.

For the errors in admitting and rejecting evidence as above indicated, the judgment must be reversed, with costs, and a new trial ordered.

CHRISTIANCY and CAMPBELL, JJ., concurred.

GRAVES, CH. J., did not sit in this case.