# *GROSVENOR v. BETHELL.

## (*Jackson.*   June 4, 1894.)

1. MORTGAGE.   *Of opera-house.*

A mortgage by an incorporated opera-house company, made after purchase of lot and while theater buildings are in course of erection thereon, conveying the lot "and all the buildings and improvements thereon, or to be erected thereon," operates to pass all furniture, fixtures, and furnishings then or thereafter placed in the theater building and essential to its successful operation.   (*Post, pp. 585-587.*)

Case cited and approved: Halley *v.* Alloway, 10 Lea, 524.

2. SAME.   *Liability for taxes.*

The purchaser of real estate at mortgage sale is liable for taxes accrued thereon for the year of the sale, which are not due and have not been assessed at that date, when the mortgage, though containing covenant against incumbrances, provides that "all past-due taxes" shall be paid out of the purchase-price, and public announcement is made at the sale that the purchaser must pay the taxes of that year.   (*Post, pp. 587, 588.*)

3. SAME.   *Purchaser's claim to rents of leased property.*

The purchaser at mortgage sale of an opera-house then leased for a rental payable in quarterly installments, is not entitled to that portion of a quarter's rental that accrues between date of sale and the date of his full compliance with its terms, when the purchaser is the sole cause of delay.   (*Post, p. 588.*)

4. TAXATION OF COSTS.   *Is a matter of discretion.*

The taxation of costs in equity causes is very largely in the discretion

---

* For a note on the question when taxes become a lien or incumbrance on land, see *Craig* v. *Summers*, 15 L. R. A., 236.

37—9 P

of the Chancellor, and will not be disturbed unless there has been manifest and palpable abuse of that discretion. (*Post, pp. 588, 589.*)

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. W. D. Beard, Ch.

Metcalf & Walker for Complainants.

Turley & Wright, H. C. Warinner, D. E. Myers, and W. M. Randolph & Sons for Defendants.

Bright, J.    This was a bill filed in the Chancery Court of Shelby County by Charles N. Grosvenor and Noland Fontaine, as trustees under *two* mortgages executed to them by the Grand Opera-house Company, against W. D. Bethell, the purchaser of the Grand Opera-house at a sale made under the first mortgage; also against the Continental National and First National Banks of Memphis, as representing the first mortgage bondholders; also against the Grand Opera-house Company; also against W. M. Randolph and others, representing the interest of the second mortgage bondholders; and also against Fritz Staub and other lessees of the Grand Opera-house building—

*First.*—To determine whether or not all the taxes on the Grand Opera-house building, etc., for the year 1893, should be paid by said trustees out of the proceeds of the sale under the first mortgage, said sale having taken place on the eighteenth of March, 1893.

*Second.*—To determine whether or not Bethell, the purchaser at said first mortgage sale, thereby acquired title to all the theater furniture and fixtures, the same having been specifically embraced with the original property, in a second mortgage executed to secure second mortgage bonds.

*Third.*—To determine whether Bethell, as such purchaser, acquired title to all the rents on the property bought by him accruing after the date it was struck off to him, viz., March 18, 1893, or only from the day the trustee's deed was executed to him, viz., April 1, 1893.

*Fourth.*—To fix incidentally the trustee's compensation.

W. D. Bethell filed an answer and cross-bill alleging that, as purchaser, he acquired title to the theater lot, building, and all the improvements, furniture, and fixtures, to the exclusion of those claiming interest therein under the second mortgage; and also that he was entitled to a *pro rata* share of the rents counting from and after March 18, 1893, the day of sale, and asking for an injunction enjoining any sale under the second mortgage, which was then advertised to take place at an early day, and which injunction was granted.

The two banks representing the first mortgage bondholders filed their answer to said original bill and the Bethell and Staub cross-bills, insisting that they were entitled to the proceeds of the sale under the first mortgage, without diminution for the taxes of 1893, the fund not being liable for same by any contract or otherwise.

W. M. Randolph filed his answer, as a second mortgage bondholder, etc., to said original and cross bills, alleging, among other things, that the theater furniture and fixtures were not embraced in the first mortgage, and did not pass to Bethell by a sale thereunder, but were only embraced in the second mortgage, and the bondholders under such mortgage had the right to their proceeds.

Fritz Staub and others, lessees, etc., filed their answer and cross-bill, admitting the lease to them of the theater, etc., but claiming, among other things, that the Grand Opera-house Company had violated its lease to them by causing them to be dispossessed under the first mortgage sale, to their serious damage, and seeking to recoup their damages against the rent notes.

The cause was heard, and the Chancellor adjudged:

*First.*—That the proceeds of sale under the first mortgage were not liable to pay the said taxes for 1893, and practically dismissing said original and cross bills as to them, with costs.

*Second.*—That the defendant, Bethell, acquired title, not only to the theater building proper, and the lots on which it was located, but also to all

the theater furniture, furnishing and fixtures, and made perpetual the injunction against a sale thereof under said second mortgage; and, further, that the complainants, as trustees, were entitled to all monthly rents, payable in advance, up to the first of April, 1893.

*Third.*—That said Staub *et al.*, lessees, whose rent was payable in quarterly installments of $1,-500 each, had a right to recoup their damages for a violation of their lease against the rent note for $1,500 due April 1, 1893, and ordered a reference for this purpose.

*Fourth.*—That complainants and their surety on cost bond pay two-thirds of the costs, to be refunded to them only out of proceeds of any sale under the *second* mortgage, and the defendant, Bethell, pay the remaining one-third of the costs.

The complainants and certain second mortgage bondholders appealed from so much of said decree as gave Bethel the right to the theater, furniture, and fixtures by purchase under the first mortgage sale, and as held the lease broken, and allowed Staub to recoup his said damages against his liability on the $1,500 rent note due April 1, 1893.

The defendant, W. D. Bethell, appealed from so much of the decree as held that the proceeds of the first mortgage sale were not liable to pay all the taxes—State, county, and municipal—for 1893, rents, etc.

The cause is now here on these two special ap-

peals, and errors have been assigned by the appellants respectively—viz., by complainants, as trustees for the *second* mortgage only, the first mortgage having no interest in such appeal, and by the defendant, Bethell, as to the matter of taxes for 1893, in which the first mortgage is concerned, and as to rents, etc.

The Grand Opera-house Company is a Tennessee corporation, and was organized in the year 1889, with a view of buying a lot and erecting a theater thereon. It bought a lot on the south-west corner of Beale and Main Streets, Memphis, Tennessee, about 100 by 228 feet, but somewhat irregular in shape, and commenced the erection of the building. Early during the progress of the building, and on January 1, 1890, the Grand Opera-house Company executed a first mortgage or trust-deed to Chas. N. Grosvenor and Noland Fontaine, as trustees, on certain of its properties—to-wit: A lot, building, and improvements, to secure the payment of $90,000 of its six per cent. coupon bonds, being ninety bonds in number, for $1,000 each.

The mortgage was duly acknowledged and registered, and the bonds authorized thereunder duly issued and negotiated, and the Continental and First National Banks now represent the holders of said bonds. This first mortgage contained the warranty of the Grand Opera-house Company, as maker, that the property was free from all incumbrances. The trustees thereunder were instructed to make

sale in case of default, and were directed to apply the *proceeds* of sale, first, to costs and expenses; second, "to the payment of any taxes that may remain unpaid and due on the property sold and conveyed;" third, to the payment of the mortgage bonds and interest.

Upon this covenant against incumbrances, and these directions to the trustees as to the application of the proceeds of sale, Bethell alone bases his contention that the taxes for 1893 should be paid out of the proceeds of the sale under said first mortgage.

On the eleventh of December, 1891, the Grand Opera-house Company leased the theater proper, with all its fixtures and furnishings, for three years, beginning with July 1, 1892, to Fritz Staub and associates for a rental of $6,000 per year in quarterly installments of $1,500 each, payable at the end of each quarter, with an agreement for use and occupation during the *term*.

On the ninth of July, 1892, the opera-house company executed another mortgage or trust deed to the same trustees, on the same lot, building, and improvements mentioned, being a second mortgage with respect to the same, and embracing also certain additional realty outside of the theater building, and likewise embracing specifically all the furniture and fixtures in or belonging to the Grand Opera-house Company, enumerating same, for the purpose of securing eighty bonds of five hundred dollars each. This second mortgage was duly ac-

knowledged and registered, but probably only about $14,000 of the bonds thereunder were issued and negotiated.

The Grand Opera-house Company defaulted in the payment of its interest on the first mortgage bonds, so that, at the request of the first mortgage bondholders, the said trustees, in compliance with their powers, properly advertised the property embraced in said first mortgage for sale, and sold same at public auction, for cash, on the eighteenth of March, 1893, the same being struck off to W. D. Bethell at $100,000.

The sale advertisement, among other things, notified the public that "all *past-due* taxes will be paid out of the purchase-money. We believe the title to said property is good, but we will sell and convey only as trustees."

Charles N. Grosvenor, one of the trustees, acted as the auctioneer at said sale, and, before inviting bids, announced that all unpaid State, county, and municipal taxes up to 1892, inclusive, would be paid out of the fund, but that the purchaser would be required to pay all taxes for the year 1893.

Mr. Bethell was present at said sale, and was within ten or twelve feet of the auctioneer at the time of the announcement, and, if he did not hear it, in fact could have heard it. He had, however, seen the original first mortgage, and had signed and executed it, as the president of the Grand Opera-house Company, and had also seen and read the sale advertisement.

Mr. Bethell's absence from Memphis immediately after the sale, the examination of the title to the property by his attorney, and the objections of his attorney to drafts of deeds, and other matters for which trustees were not responsible, delayed the acceptance of the trustee's deed by Bethell until April 1, 1893.

Mr. Bethell, under the advice of his attorney, would not close the matter until the trustees entered into a written agreement with him to retain $3,000 of the proceeds of sale in their hands until the question of the taxes for 1893 was settled by agreement or litigation. The trustees retained about $10,000 of proceeds of sale for this and other purposes.

Mr. Bethell originally asserted his right to the theater furniture and fixtures, and to rents from March 18, 1893, in hostility to the claims of Grosvenor and Fontaine, as trustees under the second mortgage, and which property the trustees had advertised, or were about to advertise, for sale under said second mortgage. The trustees and Bethell also failed to agree about the taxes of 1893, and they therefore filed the present bill.

Bethell paid $10,000 cash on day of sale, to wit, the eighteenth of March, 1893, but did not accept the deed and pay the remaining amount of the purchase-money, $90,000, until April 1, 1893.

The first contention, or assignment of error of complainant to Chancellor's decree, is that the Chancellor was in error in holding and decreeing

that Bethell was entitled to all the furniture, fixtures, and furnishings inside of and belonging to the theater building. The mortgage under which Bethell purchased contained the following provisions, etc , after describing the lot, it says: "*And all the buildings and improvements thereon, or to be erected thereon.*"

As has been stated, the Grand Opera - house Company was organized and chartered for the purpose of purchasing a lot and to construct thereon a Grand Opera-house. That was the purpose of the building, and it was equipped with all its fixtures, furniture, carpets, and paraphernalia complete as a going concern, an opera-house ready for performances in September, 1890. All of the furniture, fixtures, furnishings, and paraphernalia were necessary, and a part of said buildings, to make it a complete opera-house, and, as such, it was used and operated by the Grand Opera-house Company during the seasons of 1890, 1891, and 1892, when, in July, 1892, it was leased by Defendant Staub and his associates for three years. Now, the intention of the parties was to build and erect an opera-house complete. The whole building is to be considered in reference to its uses, and such a house, when erected and furnished for the purposes designed, makes up the building and improvements contemplated in the mortgage. 10 Lea, 524; 3 Tenn. Ch., 584.

Numerous authorities might be cited holding this doctrine, but it is useless, as we regard the

case of *Halley* v. *Alloway*, 10 Lea, 524, as settling this question; and we are unable to distinguish that case, in principle, from the present case. We therefore hold this assignment of error not well taken, and the Chancellor's decree was correct in holding that Bethell was entitled to the fixtures, furniture, etc., under his purchase, and that same passed to him.

The other ground or assignment of error of complainants is in regard to taxation of costs. This will be considered hereafter in connection with defendant Bethell's assignment of error in regard to taxation of costs.

The defendant, Bethell, assigns as error, first, the action of the Chancellor in decreeing that the taxes for 1893 must be paid by Bethell, and not by the trustees. In this the Chancellor was correct. While under our statute the taxes are assessed to the owner on the tenth of January of the year for which the property is assessable, but, while this is so, in this case the mortgage provides that the trustees are to pay "any taxes that may remain unpaid and due on the property sold and conveyed, or any part thereof." The taxes for 1893 were not due on day of sale, nor were they even assessed at that time. Besides this, the sale advertisement, among other things, notified the public "that *all past due taxes* will be paid out of the purchase-money," and, in addition to this, one of the trustees, and the auctioneer at the sale under which Bethell purchased, announced just before

said sale that all unpaid State, county, and municipal taxes up to 1892, inclusive, would be paid out of the fund, but that the purchaser would be required to pay all taxes for the year 1893. Bethell read the sale advertisement, was present at the sale, bid on and purchased the property, and must have known the terms of sale. The contract was clearly announced that the purchaser must pay all the taxes on said property for the year 1893. Thus it will be seen the property was sold and purchased with this understanding. The Chancellor was correct in holding that Bethell must pay the taxes for 1893, and that said funds in the hands of the trustees were not liable to pay same. Hence, it follows that this assignment of error is not well taken.

Bethell insists, by his next assignment of error, that he is entitled to the rents accruing on this property from March 18, 1893, date of his purchase, up to April 1, 1893, the day he accepted the deed and went in possession. Bethell did not pay all the purchase-money, some ninety thousand dollars remaining unpaid until April 1, 1893. He was the cause of the delay. He paid no interest on the balance of purchase-money. It was his fault, or delay, that he did not get his deed earlier; and we can see no reason why he should be entitled to the rents, and the Chancellor was correct in holding he was not entitled to same.

We now come to consider the question of taxation of costs by the Chancellor, raised by assign-

Grosvenor *v.* Bethell.

ment of errors of complainants and defendant, Bethell. The Chancellor taxed complainants with two-thirds of the costs, to be paid out of proceeds of sale under second mortgage, and defendant, Bethell, with one-third of the costs. The taxation of costs in equity cases is very largely in the discretion of the Chancellor, and this Court will not ordinarily disturb the taxation made by him. Very much of the costs accrued at the instance of Bethell.

In regard to his contention on his cross-bill in regard to taxes for 1893, rents, and his injunction, etc., we think the Chancellor was correct in his taxation of the costs.

All of the assignment of errors of both complainants and defendant will be overruled, and the decree of the Chancellor in all things will be affirmed, and the cause remanded for the execution of the reference ordered by the Court, etc.

The complainants will pay one-half of the costs of this Court out of funds arising from sale under second mortgage, and defendant, Bethell, the other remaining one-half of the costs. The costs of the Court below will be paid as adjudged by the Chancellor.