WHITFIELD v. MAY et al.—89 S. W. (2d) 764.

Middle Section. September 21, 1935.

Petition for Certiorari denied by Supreme Court, January 25, 1936.

Eslick & Hagan, of Pulaski, for appellants J. H. and Rebecca May and John B. Wilkes.

E. B. Rayburn and R. E. Lee, both of Pulaski, for appellee Whitfield.

CROWNOVER, J. The original bill in this cause was filed by the complainant for the purpose of recovering the surplus proceeds of foreclosure sale of mortgaged property after paying the mortgage debt.

The defendants answered and denied that any surplus remained after the satisfaction of the mortgage debt and the payment of taxes.

The chancellor held that a surplus of $215.81 remained after the satisfaction of the mortgage debt, and decreed that the complainant recover that amount, with interest and all costs of the cause, from the defendants John B. Wilkes, individually and as trustee, and Rebecca May, which was decreed to be a lien on the property.

The defendants appealed to this court, assigning eight errors, which, in substance, raise but a single proposition: That the chancellor erred in holding that J. H. May, as agent of Rebecca May, bought the property for her at the foreclosure sale and assumed all back taxes, and in rendering a decree against appellants.

The facts of the case are as follows: On February 27, 1932, the complainant and his wife executed a deed of trust with power of sale on their home to J. B. Wilkes, as trustee, to secure the payment of a note, executed to said Wilkes, for $399.16.

The mortgagors agreed in the deed of trust, among other things, "to pay all taxes and assessments, and to pay them when due; and

in case we fail to do either, then said Trustee, or the creditor herein secured, may do either, and charge and treat the amount so expended as a part of the debt herein secured.''

The note was not paid at maturity, and on May 1, 1933, the trustee advertised the land for sale, as was provided in the trust deed.

The notice of sale provided, among other things, that:

''Said property will be sold to the highest bidder for cash free from the equity of redemption, homestead and dower or courtesy, all being expressly waived in said deed of trust, but subject to any state, county, city or special taxes that may be due and payable. Proceeds derived from the sale of said real estate shall first be applied to the satisfaction of all cost and expenses of foreclosure in full, next to the satisfaction of the full amount due on the above note and trust deed securing said note. The balance will be paid to the parties legally entitled thereto.''

On the morning of the day of the sale, June 3, 1933, the complainant talked to the defendant J. H. May about lending him enough money to pay off the mortgage. May told him that he thought that his daughter had some money, but that he would have to find out. May went down to the complainant's place with him and looked it over. Later in the morning, May called up the complainant and told him that he could not let him have the money since his daughter had promised to use it elsewhere. Later May discovered that his wife would let his daughter have enough money to pay off the mortgage, but he was not able to find the complainant and tell him so.

At 1 o'clock, the hour set for the sale, May went up to the court-house, where the sale was to be held, and looked for the complainant, but could not find him there. The complainant did not attend the sale. The sale was started and May asked one of the by-standers, Bud Houston, to bid for him.

Before the sale was started, the defendant Wilkes publicly read the notice of sale with the terms. The sale was then opened by the auctioneer and the bidding started. After the bidding had progressed to a certain point, one of the bidders, Jerry Ragsdale, called out to Wilkes, and asked him the amount of taxes on the place. Wilkes replied that he did not know the exact amount of taxes that were due, but that possibly the 1932 taxes were due.

At this point, the person who had bid last, Mrs. Taylor Smith, asked to withdraw her bid of $635. She was allowed to do this. The auctioneer then turned to Houston, who was representing May, and asked him if his bid of $630, which was the next highest, still stood. Houston spoke to May, and then turned to the auctioneer and said that it did. The property was then sold to Houston for $630, subject to the terms of the sale.

Houston then told the auctioneer that he was representing May.

Wilkes then asked May to whom did he want the deed made and May told him to make it to his wife.

May then made inquiry as to the amount of taxes on the place and found that the taxes were considerably more than he had antici-- pated. He then went to Wilkes and told him that he had mis- represented things to him. Later in the evening, May saw the com- plainant and told him that he had tried to save the property, and asked him what he wanted done with it. The complainant told him that "he was tired of fooling with it, and was going to let it go."

After May had been to see Wilkes, Wilkes wrote the complainant the following letter:

"June 3rd, 1933

"Cope Whitfield, Pulaski, Tennessee

"Dear Sir: When your property was sold today Mr. Henry May had Mr. Bud Houston to bid for him and when the property was knocked off at $630.00 Henry May and Bud Houston told me to make the deed to Mrs. Ida May, Mr. Henry May's wife. When I went to the office to draw the deed Mr. May refused to stand by his bid, claiming that he did not know there were so much tax at Street improvement outstanding though the sale was announced to be made subject to said taxes.

"Please call at my office and let us determine what we want to do with reference to this bid of Mr. Mays. Kindly attend to it at once. Very greatly oblige.

"Very respectfully,

"Jno. B. Wilkes."

The complainant received this letter the next day, and went to see Wilkes about it. He told Wilkes that he wanted him to pay him (the complainant) the difference between what he owed him and what the place brought. Wilkes told the complainant that he had not collected anything and could not pay him.

Later they had another conversation, and Wilkes told him that he did not owe him anything. A few days after this conversation, the complainant saw Wilkes again, and a third time asked him for a check, but Wilkes told him again that he owed him nothing.

The complainant made an investigation, and found that Wilkes had executed a deed to Miss Rebecca May, the daughter of J. H. May. The deed recited, among other things, that Miss Rebecca May became the purchaser of the property by her bid of $630; that that amount was paid to Wilkes; that the place was unen- cumbered, "except as to the balance of taxes due, as hereinafter set out and shown;" that:

"The consideration paid to me for said real estate, of $630.00, was applied in the following way and manner: there was paid to the undersigned John B. Wilkes the sum of $414.19, being the

amount due on said note, plus state and county taxes for 1931, paid by John B. Wilkes, of $15.03, leaving the sum of $215.81, and there is now outstanding and due as taxes on said real estate the sum of $11.48, state and county tax for the year 1932, and there is due and outstanding tax due the Town of Pulaski $33.60, and street paving assessments of $482.00, making a total of $527.08 due for said state, county and city taxes and street paving assessments to the Town of Pulaski, thereon, and at the direction of said Rebecca May said sum of $215.81 was applied to the payment of said state, county and city taxes and said street paving assessments, due on said property, by check of said Rebecca May, said sum of $215.81 not passing through the hands of John B. Wilkes, trustee.''

Said deed was executed and delivered to the aforesaid Rebecca May about two weeks after the sale, and it was recorded.

■ We are of the opinion that the chancellor did not err in holding that the defendant J. H. May, as agent, bought the property at the foreclosure sale, and assumed all back taxes.

The sale of this land was advertised properly, a copy of the notice was mailed to the complainant, and he read it and understood the same. A copy of the notice was publicly read at the sale by Wilkes and was heard by all of the bidders. The terms of the sale stated that the property was sold "subject to any state, county, city or special taxes that may be due and payable.'' There was a controversy at the sale as to the amount of the taxes and one bid was withdrawn on that account. After this controversy and subsequent withdrawal of the bid, May's bidder was asked if his bid stood, and after conferring with May, he stated that it did.

May understood that he bought the property subject to the taxes. His bid meant that he bought the property for $630 plus any taxes that were due and unpaid. As further evidence that he understood that he bought it in this way, Wilkes wrote the complainant a letter, which we have just quoted, and told him that May "refused to stand by his bid claiming that he did not know there was so much tax at Street improvement outstanding though the sale was announced to be made subject to said taxes.''

The complainant, upon conferring with Wilkes, refused to allow May to back out of his agreement, and told Wilkes that he was looking to him for the surplus over the debt.

■■ The owner of property offered for sale at auction has the right to prescribe the manner, conditions, and terms of sale. Printed conditions under which a sale proceeds are binding on both the buyer and seller, and cannot be varied, although they may be explained by verbal statements of the auctioneer made at the time of the sale. 6 C. J., 827, 828.

■ The conditions of a public sale, announced by the auctioneer at the time and place of the sale, are binding upon a purchaser,

whether he knew them or not. So also, where it is the custom to post up the conditions in the auctioneer's room, and the auctioneer announces that the conditions are as usual, a purchaser is bound by the conditions, whether he sees them or not. 6 C. J. 828, sec. 20.

■ On the issue as to the price bid at a sale, evidence of one bidder as to his understanding of the price bid by the person to whom the property was knocked down is competent. Ives v. Tregent, 29 Mich., 390; 6 C. J., 830, note 3b.

■ As a general rule, where there has been fraud on the part of the auctioneer, or false representation by the seller or the auctioneer of a material fact, the buyer may be relieved of his purchase and is entitled to have the contract of sale set aside, unless he had knowledge of the true state of facts and was not misled by the misrepresentations. 6 C. J., 836, 837, sec. 44.

The buyer in this case did at first attempt to avoid the sale in this case on the ground of misrepresentation, but he did not stand by it. He waived the misrepresentation, if there was any, and we do not believe that there was any, and made a new agreement with the seller in violation of his bid. The property was sold to Houston for May for $630, subject to all back taxes.

The taxes were due at the time of the sale, and some of them had been due for several years. It was the duty of the buyer to investigate the amount of the taxes, and find out how much was due. It is unfortunate for him if he waited until after he bought the property to discover the amount of them. But he did ascertain the amount of the taxes before he accepted the deed for his daughter, as he admits and as the deed itself shows. He cannot now, however, demand that they be paid out of the fund that was bid, for the notice provided that the land was sold subject to all back taxes.

Ordinarily, where a mortgagor conveys by deed which simply states that the conveyance is "subject to a certain specified mortgage," or words to that effect, the grantee takes the land burdened with the lien, but he does not, however, become personally liable for the mortgage debt, unless the intent to assume the debt clearly appears. 3 Pomeroy's Eq. Jur. (4th Ed.), secs. 1205 and 1206; 7 Words and Phrases, First Series, pp. 6713 to 6716; 2 Lawrence Eq. Jur., secs. 643-646; 25 R. C. L., 1346, sec. 29, p. 1368, sec. 50.

■ But the purchaser, as a general rule, takes title subject to accrued unpaid taxes, provided, under the statute, they constitute a lien on the land. 42 C. J., 258; Elmira Mechanics' Society v. Stanchfield (C. C. A.), 160 F., 811.

■ A purchaser at a foreclosure sale, with knowledge that the sale is subject to a transfer tax, is not entitled to object to the title on the ground of such tax. March v. Marasco, 165 App. Div., 348, 150 N. Y. S., 792.

■ Where the unpaid taxes are a lien on the purchaser's land, he cannot, after paying them, compel the former owner to refund the amount paid. 42 C. J., 259; 41 C. J., 1002; Dillwyn Apartment Realty Co. v. First Mortg. Guar. & Trust Co., 63 Pa. Super. Ct., 450; Gimber's Estate, 15 Pa. Dist. & Co. R., 59; Grosvenor v. Bethell, 93 Tenn., 577, 26 S. W., 1096; Merchants' Bank, etc., Co. v. Watson, 187 N. C., 107, 121 S. E., 181.

■ The purchaser himself cannot retain from his bid a sum sufficient to pay taxes. 3 Jones Mortg. (8th Ed.), secs. 2117, 2161; Osterberg v. Union Trust Co., 93 U. S., 424, 23 L. Ed., 964.

■ The purchaser of real estate at a mortgage sale is liable for taxes accrued thereon, though the mortgage contains a covenant against incumbrances, when the notice of sale and public announcement of the terms of sale provide that the purchaser must pay all past-due taxes. Grosvenor v. Bethell, 93 Tenn., 577, 26 S. W., 1096; Ellis v. Foster, 7 Heisk., 131, 134; Business Women's Hold. Co. v. Farmers' & Mechanics' Sav. Bank (Minn.), 259 N. W., 812; 99 A. L. R., 576.

The agreement that the parties made after the sale as to the disposition of the proceeds was illegal and will not be upheld.

J. H. May was the agent of his daughter. At first, he does not seem to know whether he is representing his wife or his daughter. Later on, however, his daughter stepped in and had the deed executed to her. By her actions, she ratified the acts of her agent.

■ Generally, if the principal receive and hold the proceeds or beneficial results of a contract made on his behalf, without authority, he will be estopped from denying an original authority or ratification. Evans v. Buckner, 1 Heisk., 291, 294; Winham v. Crutcher, 10 Lea, 610, 616; Barnard v. Roane Iron Co., 85 Tenn., 139, 2 S. W., 21; 1 Michie's Digest, 275.

■ A principal, who accepts the benefit of a contract made on his behalf by his authorized agent, will be held responsible for the fraudulent representations of the agent, although made without authority. Barnard v. Roane Iron Co., 85 Tenn., 139, 2 S. W., 21; 1 Michie's Digest, 276.

■ As a general rule, when a knowledge of the unauthorized transaction of the agent comes to the principal, he must with reasonable promptness disaffirm the acts of the agent, or he will be held bound thereby. Bement & Sons v. Armstrong (Tenn. Ch. App.), 39 S. W., 899, 903; Walker v. Walker, 7 Baxt., 260, 264; 1 Michie's Digest, 276.

■ A purchase or acquisition of property by an agent without authority, or in excess of his authority, including all the terms and conditions, is ordinarily ratified by the principal accepting and retaining the benefits of such purchase or acquisition, unless, at the time of his acceptance, he had no knowledge of the agent's un-

authorized acts, or unless the acceptance is legally forced upon him; and such a ratification also includes the fraud or representations of the agent in the course of the transaction as inducements to the purchase or acquisition. 2 C. J., 500, 501, sec. 121.

■ The acceptance of a deed by one for another without authority is ratified by the other in subsequently accepting it himself. 2 C. J., 502, note 14a.

■ Since May was the agent of his daughter, Rebecca, and bought the property subject to the unpaid taxes, Rebecca cannot apply any portion of the fund bid to the payment of these unpaid taxes, and is liable for the sum misappropriated.

■ The appellants' assignment that the chancellor erred in holding that there was an agreement between John B. Wilkes and Rebecca May in violation of the bid is without merit and must be overruled. All of the parties understood the terms of the sale. The subsequent application of a part of the proceeds of the sale to the payment of delinquent taxes shows conclusively that there was an agreement between Rebecca May and John B. Wilkes in violation of the bid, and this agreement cannot be upheld by this court.

■ There was no error in the chancellor's holding that John B. Wilkes was liable. Under the deed of trust, the trustee agreed to pay the residue, after the payment of the costs and the debt, to the beneficiary. He failed to do this. On the contrary, in his individual capacity, and also as trustee, he made a new agreement with Miss Rebecca May, whereby the surplus was expended in the payment of back taxes, instead of to the beneficiary.

■ If a trustee misapply the funds of the cestui que trust, the latter has the right, at his election, either to take the property in which the funds are wrongfully invested, or to demand repayment from the trustee of the original fund, with interest thereon. Treadwell v. McKeon, 7 Baxt., 445, 449.

Wilkes, as trustee, is therefore liable to the complainant for the difference between his debt and the amount of the bid, which is $215.81, and he must account for the same. Leiper v. Ransom, 2 Cold., 511.

■ The appellants' assignment, that the chancellor erred in giving a lien on the property must also be overruled. The surplus from the sale, which belonged to the complainant, was used by the trustee, or was permitted to be used under his supervision, for the payment of delinquent taxes, that is, it was invested in the land. The money was not paid over to the beneficiary. It therefore becomes a charge upon the land, and the beneficiary is entitled to a lien on the land for the satisfaction of his debt. Preston v. Moore, 133 Tenn., 247, 255, 180 S. W.. 320, L. R. A., 1916C, 578; Gordon v. English, 3 Lea, 634, 638; Moffitt v. McDonald, 11 Humph., 457; 12 Michie's Digest, 102.

It therefore results that the assignments of error are overruled and the decree of the chancellor that the complainant, Cope Whitfield, recover of John B. Wilkes, individually and as trustee, and Rebecca May the sum of $215.81 and interest on the same from the date of suit, and all costs of this cause, is affirmed.

The cost of the cause including the cost of the appeal is decreed against the defendants John B. Wilkes and Rebecca May and the sureties on their appeal bond. The complainant has lien on said land for the payment of this decree and costs. The defendants are allowed sixty days from the date of the entry of this decree in which to pay same. In default of which the cause will be remanded to the chancery court of Giles county for a sale of the property under proper orders of the chancellor.

Faw, P. J., and DeWitt, J., concur.