HAWKINS et al. v. SPICER et al.—101 S. W. (2d) 151.

Middle Section.   November 7, 1936.

Petition for Certiorari denied by Supreme Court, January 23, 1937.

E. A. Langford, of Cookeville, for appellants Hawkins.
White & White, of Livingston, for appellees Spicer and Gore.

CROWNOVER, J. The original bill in this cause was filed by the complainants to have set aside a trustee's sale of mortgaged property on the ground that the sale was invalid and the sale price was inadequate. And complainants asked that in the event said sale could not be set aside complainants be given a decree for the difference between the purchase price and the indebtedness with interest and costs.

The defendants answered and denied that the sale was illegally conducted, and denied that there was any surplus after the payment of the notes, interest, fees, and taxes. And they charged that Hawkins ratified said sale by executing an agreement to repurchase the land from Spicer, which he failed to carry out, and is therefore estopped to attack said proceedings.

The case, by written agreement, was heard by the chancellor on oral and documentary evidence, the chancellor sitting as a jury.

The chancellor found that the sale was valid, and the sale price was not inadequate, and that the proceeds of the sale had been properly applied except as to two items: That the trustee had paid an at-

torneys' fee of $50 for collecting one of these notes, which was not provided for in the note; and that the trustee had charged for his services a fee of $50, of which he had received $49, which was excessive, and that a reasonable fee would be $29. He rendered decree against the defendants for $70, with interest from April 11, 1933.

He further found that the complainant P. W. Hawkins, after the sale of the land by the trustees, signed a contract to repurchase this land from Spicer, by which he was estopped to complain of the manner in which the sale was conducted.

Motion for a new trial having been overruled, the complainants appealed to this court and have assigned errors, which are, in substance, as follows:

(1) The sale was invalid because (a) there was only one bid, and that was by the trustee; (b) the sale was conducted by the sheriff and not by the trustee; (c) the land was bid in by the trustee or trust creditor; (d) the land was sold as a whole and not in separate tracts; (e) the bid was transferred to Spicer.

(2) The consideration was inadequate.

(3) The chancellor erred in holding that the taxes could be paid out of the proceeds of the sale of the lands.

(4) The chancellor erred in taxing complainants with their own costs.

P. W. Hawkins and wife, M. L. Hawkins, of Overton county, on January 21, 1932, executed a note for $800 to Leslie Carwile and one for $533.34 to Dora Hawkins, for borrowed money; both notes being payable twelve months after date. W. M. Brown, J. C. Boles, J. A. Gore, and J. B. Dale signed both notes as sureties. On March 12, 1932, Hawkins and wife executed a trust on about 189 acres of land, in two tracts, to secure the sureties. J. A. Gore, one of the sureties, was named trustee.

A payment of $114.34 was made on the note to Dora Hawkins but nothing was paid on the other note.

On February 10, 1933, when both notes were past due, the trustee advertised the land for sale.

The sale was held by the sheriff, on April 11, 1933. There was only one bid, that of J. A. Gore (trustee and surety) in behalf of himself and the other sureties for $1,540, and the property was sold to them.

Several days later they assigned and transferred their bid to Ernest Spicer.

Spicer paid taxes on the lands for 1931, $76.83, and for 1932, $54.54, making a total of $131.37, and then paid the rest to the trustee. The trustee paid the notes with interest, amounting to approximately $1,300; paid an attorney's fee of $50 for the collection of the Dora Hawkins note; and $49 to himself as trustee's fee—which consumed the whole sale price.

On November 27, 1933, Hawkins entered into a contract with Spicer to repurchase the lands for $2,000, but failed to carry out the contract.

Later he filed this suit.

1. There is nothing in the complainants' numerous contentions that the sale was not legally conducted.

(a) The fact that there was only one bid does not render the sale invalid, as it appears that the sale was properly advertised and there were twenty-five or thirty people present when the sale was held, and the whole matter was handled fairly. 41 C. J., 984; 28 Am. & Eng. Ency. of Law (2 Ed.), 814.

(b) The crying of the sale by the sheriff, for the trustee, did not affect the validity of the sale. It appears that the trustee was present at the sale and the sheriff was merely the auctioneer.

In the case of Green v. Stevenson, 54 S. W., 1011, 1014, the Tennessee Court of Chancery Appeals, in referring to some cases which hold that the presence of the trustee is necessary, said:

"This, of course, does not mean that a trustee in a deed of trust may not employ an agent to make the sale of the trust property for him, or to perform the merely mechanical or ministerial duties connected with its execution, but it must be his sale by his agent."

(c) A trustee or mortgagee may bid at his own sale. While in most states the mortgagee or trustee in a mortgage or deed of trust which contains a power of sale on default cannot become the purchaser at a sale which he, himself, makes under the power, either directly or through the agency of a third person, Tennessee is an exception to this rule, and a trustee may purchase at the trust sale, but his relations to the mortgagor or debtor impose upon him the observance of fairness and good faith, and if he makes an improper use of the power and becomes the purchaser, he can retain the property only as security for his debt. 41 C. J., 978, 979; 1026, section 1490; Jones Auto Co. v. Carr & Co., 4 Tenn. App., 443, 446, 447; Lyon v. Jones, 6 Humph., 533.

(d) The complainants now complain in this court that the lands were not offered for sale in parcels, but no request was made, in accordance with Code, section 7802, before the sale.

The fact that the lands were not offered for sale in parcels does not render the sale void. Doty v. Federal Land Bank, 169 Tenn., 496, 502, 89 S. W. (2d) 337, 90 S. W. (2d), 527.

(e) There could be no objection to the trustee's executing a deed to Spicer. If the purchasers request that the deed be made to some other person than themselves, the trustee can execute the deed to such person. If bidders at a public sale like this transfer their bid to another, and direct the deed to be made to such person, and if there be no fraud in the transaction, and no loss to the mortgagor thereby, there can be no objection. 1 Devlin on Real Estate (3 Ed.),

743, section 422. In this case it was not shown that there was any fraud in the transaction or loss to the mortgagors; Spicer paid the exact amount bid by Gore. The bid was transferred by written instrument, acknowledged and recorded. After that the trustee executed a warranty deed to Spicer.

2. From the testimony of the witnesses it appears that the sale price was not inadequate; that the value of the lands at the time of the sale was between $1,500 and $1,600.

3. The chancellor was not in error in holding that the delinquent taxes were properly paid out of the proceeds of the sale.

The 1931 and 1932 taxes were delinquent.

The notice of sale, after giving date and place of sale and description of the property, etc., stated:

"Said sale will be made without the rights of redemption, homestead, dower and other exemptions to satisfy said deed of trust, the notes with all past taxes due against said lands, the amount of the notes being about $1420.00. A general warranty deed will be made to the purchasers for said lands."

The taxes due on the property sold, if unpaid, are to be deducted from the moneys arising from the sale, unless it was made subject to them. 3 Jones on Mortgages (8 Ed.), 682, section 2161.

This notice certainly did not provide that the purchaser must pay all past-due taxes or that the land was sold subject to the taxes.

The trustee stated in the notice that he would execute a general warranty deed to the purchaser, and the trust deed warrants the title of the property to the trustee.

"The rule may be said to be a general one with respect to fiduciary vendors, who have either no interest in the subject of the sale, or have a naked legal title, that the purchaser is entitled to no covenants but that the vendor has done no act to incumber the estate, which is very generally called 'the usual trustee covenant'; it being evident that few persons could be found to act in a fiduciary or representative capacity if they were compellable to enter into covenants of greater scope." Rawle on Covenants for Title, 551, 552.

The assignee, the grantee, mortgagees, and purchasers under a mortgage acquire the benefits of the covenants that run with the land. Rawle on Covenants for Title, 360, 366-372.

"But whatever difference of opinion may exist as to the right of an assignee to take advantage of the covenants for seizin or against incumbrances, there is none as regards the covenants for quiet enjoyment and of warranty. These are, with entire unanimity on both sides of the Atlantic, held to inure to the protection of the owner, for the time being, of the estate which they are intended to assure, passing with it by descent or by purchase, by voluntary or by involuntary alienation. They may, therefore, be enforced not only by the covenantee and his representatives, but by heirs, devisees, and

alienees, who claim under the seizin vested in the original covenantee." Rawle on Covenants for Title, 360.

"But from the doctrine that the benefit of covenants for title passes, with the legal estate, through successive alienations, and vests in and is divisible among its owners for the time being, it would seem, in strictness, to follow, that where a mortgage of the land is given, the benefit of the covenants must, in a court of law, be regarded as passing with the legal estate to the mortgagee. It would be, indeed, obvious that, to the extent of his interest in the land, he would be entitled to the protection of the covenants." Rawle on Covenants for Title, 366.

4. The taxation of costs in equity causes is very largely in the discretion of the Chancellor, and will not be disturbed unless there has been manifest and palpable abuse of that discretion. Grosvenor v. Bethell, 93 Tenn., 577, 26 S. W., 1096; State ex rel. v. Bush, 141 Tenn., 229, 208 S. W., 607; Woolfolk v. Woolfolk, 167 Tenn., 362, 69 S. W. (2d), 1089, 1090.

Hence all the assignments of errors must be overruled, and a decree for $70 and interest in favor of the complainants will be entered in this court.

One half of the costs of the cause that accrued in the lower court and the costs of the appeal are decreed against the appellants Hawkins, and the other half of the costs that accrued in the lower court are decreed against the appellees Spicer and Gore.

Faw, P. J., and DeWitt, J., concur.