BILL JONES AUTO COMPANY et al. v. H. E. CARR and COMPANY, et al.

Middle Section.  December 23, 1926.

Petitions for Certiorari denied by Supreme Court April 9, 1927.

1. **Courts. Rules of the Court of Appeals will receive a reasonable construction.**

Where a motion was filed to strike appellant assignments of error because they did not comply with the rules of court, held that while the assignments did not fully comply with the rules, yet they reasonably complied with them and the motion to strike the assignments must be overruled.

2. **Mortgages. Mortgagee or creditor buying at a trustee's sale must observe good faith and not improperly use his power.**

It has been held in Tennessee that a mortgagee, or creditor, or trustee in a deed of trust, may purchase at the trust sale, and his title will be good, but his relations to the mortgagor or debtor impose upon him the observance of fairness and good faith, and if he makes an improper use of the power which he has over the trustee and over the sale, and become the purchaser, he will, in equity, be entitled to retain the property only as security for his debt.

3. **Sales. Conditional sales. Seller under a conditional sales contract when the property is sold is governed by the same rules as a mortgagee at a trustees sale.**

Where goods are sold under a conditional sales contract, and the goods are later sold for failure to pay the debt, held the seller may become a bidder and purchase at the sale but he must treat the original purchaser fairly and must not make improper use of his power.

4. **Conditional sales. Evidence. Evidence examined and held to show that that buyer at a sale of property under a conditional sales contract had not acted fairly with the original purchaser.**

In an action to recover on certain notes which were given to secure the purchase of a truck where a cross bill was filed alleging that the truck had been repossessed and sold for an amount sufficient to satisfy the note and the evidence showed that an agreement was had between the parties wherein the seller should take possession of the truck and try to sell it for ten days and if it could not, then it would sell it under the sales contract, and the evidence further showed that a private sale was made before the expiration of the period but that the seller did not advise the original purchaser, but put the truck up for sale, and bought it in at a lower figure, held that the seller must account to the original purchaser for the price received by it.

Appeal from Chancery Court, Marion County; Hon. T. L. Stewart, Chancellor.

Reversed.

Horace M. Carr, of Harriman, for appellants, H. E. Carr & Co.

C. A. Noone of Chattanooga, for appellees, Auto Co., et al.

CROWNOVER, J.  The Bill Jones Auto Company, a corporation, and several other creditors filed this bill against the defendants, a co-

partnership, and sought to recover decrees for the respective amounts alleged to be due them and to impound certain funds in the hands of the Clerk and Master.

The defendants answered and admitted liability to certain of the complainants but denied liability to the Auto Company, and filed the answer as a cross-bill against the Auto Company, and alleged that they purchased a Packard truck from the complainant, Auto Company, for the sum of $3,000, and executed notes in which the title of the truck was retained by the Auto Company, upon which notes they owed a balance, but that about August 17, 1917, the defendants agreed to return the truck to the Auto Company with an agreement that it would try for ten days to sell the truck at a private sale, and apply the proceeds on the balance due on the notes and pay the difference, if any, to cross-complainants; that after said truck was returned in compliance with said agreement, the Auto Company, without the knowledge of cross-complainants, made a private agreement with E. Scott Miles and William Eastland to sell said truck to the Ogden Coal and Supply Company for $2,250; that on August 24, 1917, said Auto Company advertised said truck for sale in an attempt to comply with the conditional sales statute, and purchased said truck for itself at $1,500, and thereafter delivered the same to said parties at the price of $2,250, but credited cross-complainants with only $1,500 and persists in its refusal to settle with cross-complainants for $2,250, although demand has been made. They filed their answer as a cross-bill and asked for a decree for the difference together with interest thereon from September 4, 1917.

The Auto Company answered the cross-bill and admitted that it took the truck with such an agreement, and that it tried in good faith to sell the truck for ten days, but failed to do so, and on August 24, it advertised the truck for sale to be had on September 4th, and on that day it purchased the truck at said sale for the sum of $1,500, and that it complied with the conditional sales statute.

Several depositions were taken, and at the trial the Chancellor held that complainant, Auto Company, had complied with the conditional sales statute and had purchased the truck for $1,500, and directed that this sum be credited on the notes, and ordered a reference to the master to ascertain and report the balance due the complainant, Auto Company, on said notes and an account for repairs. The master reported that the balance due on the notes was $1,807.11, with interest thereon of $105.17, making a total of $1,912.28, and that the defendants owed the Auto Company an account of $247.91, making a total of $2,160.19, less the proceeds of said sale of the truck, of $1,500, leaving a balance of $660.19. The defendants excepted to the report claiming another credit of

$392.89, and that the master had allowed too much interest; which exceptions were sustained by the Chancellor. The Chancellor allowed said credit of $392.89, and only $64 interest on the notes, and therefore, rendered. a decree for $226.21.

The defendants excepted to said decree, and have appealed to this court and have assigned seven errors, all of which are on the proposition that the Chancellor erred in dismissing the defendants' cross-bill and in not granting the relief therein sought, that is, in not holding the Auto Company liable for $750, the difference in the price paid by E. Scott Miles and William Eastland under the private agreement made by the Auto Company and the price it attempted to purchase at the alleged foreclosure sale, together with interest thereon from September 4, 1917.

The appellee has made a motion to strike the appellants' assignment of errors, because they have not made appropriate reference to the pages of the transcript and have not cited the law, in compliance with the rules of this court. After an examination of the assignment of errors we are of the opinion that the assignment is sufficient. While the citations to the record could have been a little more specific and the citation of more authorities would have helped the court, still we think that our rules should receive a reasonable construction, and we think that appellants have reasonably complied with the rules; hence, the motion to strike the assignment for these reasons will be overruled.

After an examination of the record we are of the opinion that the assignments of error should be sustained.

On September 26, 1916, the Auto Company sold a four-ton Packard truck to the defendants for $3,000, and defendants executed title retention notes upon which they afterwards made certain payments, but they defaulted in the last payments. About the middle of August, 1917, complainant had a telephone conversation with the defendants in which it was agreed that the truck would be returned to the Auto Company and that the Auto Company would try for ten days to sell it at a private sale, and apply the proceeds on the amount due it and pay the balance, if any, to the defendants. The truck at that time was at Wartburg, in Morgan county, some distance from Chattanooga, and in pursuance to this conversation Mr. Carr returned it to the Auto Company at Chattanooga, taking possibly four days to make the trip.

On August 17, 1917, Mr. Noone, an attorney for the Auto Company, wrote the defendants at Harriman that Mr. Jones of the Auto Company was willing to "take the car back" at Chattanooga and guarantee $1,500 on the sale, to be credited on the notes, or was willing to take the car back and make an endeavor for a period of ten days to sell for a better price, but in the event he did not get

a better price he agreed to see that the defendants received a credit of $1,500, or he would make the defendants an alternative proposition, that they pay $500 to be credited on the open account and notes. The defendants did not answer that letter. The truck arrived about four days thereafter, and on August 24, 1917, it was advertised to be sold on September 4, 1917, at which time, it was bought in by the complainant, Auto Company, for $1,500; but it should be stated that just before the complainant had the telephone communication, E. Scott Miles had called on the Auto Company with a purpose of purchasing a truck similar to the one in controversy. Jones told him about this truck and said that he would get it in and show it to him. Afterwards, Miles was notified that Jones had the truck. He and Eastland went over and examined the truck, and on August 29, 1917, they agreed with Jones to purchase the truck for $2,250 and paid $400 on the same, Jones agreeing to repair the truck and put it in good condition. On September 8, 1917, the truck was delivered to Miles and Eastland, and they made another cash payment and executed notes for the deferred payments. The defendants were not given any notice of this agreement and sale to Miles and Eastland, but ascertained the fact, later on, from other parties, and made demand for the difference, but the Auto Company only gave them credit for $1500 and demanded payment of the balance on the notes and account; hence, this suit resulted.

There is some controversy between the Auto Company and the defendants about the agreement as to when and how long the Auto Company was to try to sell the truck at private sale, but the complainant admitted in its answer to the cross-bill, and the complainants' testimony also showed that the truck was to be returned with the agreement that the Auto Company would try to sell the truck for ten days and if it could not be sold at private sale then it was to be advertised and sold under the conditional sales statute.

Under the facts in this case we think that it was the duty of the Auto Company to notify the defendants of the agreement to sell the truck to Miles and Eastland, and to allow the defendants credit on the notes for the whole amount of $2,250, less expenses in repairing the truck for the sale, and that the Auto Company is liable for that amount.

It has been held in Tennessee that a mortgagee, or creditor, or trustee in a deed of trust, may purchase at the trust sale, and his title will be good, but his relations to the mortgagor or debtor impose upon him the observance of fairness and good faith, and if he makes an improper use of the power which he has over the trustee and over the sale, and become the purchaser, he will, in

equity, be entitled to retain the property only as security for his debt. See, Lyon v. Jones, 6 Humph., 532; Coffee v. Ruffin, 4 Cold., 513; 7 Cyc., 114, 41 C. J., 979.

The same is true of the vendor who sells the property under the conditional sales statute. By this statute (Code 3667) the seller may become a bidder and purchaser at the sale; but the retention of title in the seller is a mere security for the payment of the purchase price, and the seller has nothing more than a mere lien for such security. The purchaser is the equitable owner of such property and he has a very distinct interest in it. See, authorities cited in Shannon's New Code, sec. 3670a11, Notes 2 and 8.

This statute is based on the policy of protecting persons, who buy property under conditional sales, against the oppression on the part of the vendors, as such purchasers are usually unable to protect themselves. See, Ward v. Sharp, 12 Thomp., 350-2.

The Auto Company, under this agreement, became the agent of the defendants for the purpose of private sale for the days, and it was its duty to have informed the defendants of all prospective sales, which it did not do. Under the facts in the case we think that the Auto Company agreed to try to sell the truck for ten days after it received it. The proof shows that it received the truck sometime between August 20 and 24. It made this sale to Miles and Eastland on the 29th, so we think that this private sale clearly came within the ten days. Being an agent of the defendants it was imposed with the duty of good faith and loyalty so long as that agency existed, and to so deal with the subject-matter and with the information acquired during the course of the agency as not to make a private profit out of it, and if it did, the Auto Company may be held as trustee, and may be compelled to account for all profits. See, 2 C. J., 697.

"Now, it is well settled that a party acting as agent of another cannot be permitted to make a profit for himself, by taking advantage of his position, and it needs no authority to sustain it. . . . And such party holds such profits for the benefit of the party whose confidence he has abused." See, Mornett v. Days, 1 Baxt., 434-5; Hicks v. Walker, 4 Hig., 367.

But regardless of whether the technical sale to Miles and Eastland was made before or after the ten days had expired, we think that the Auto Company had no right to make this private sale at any time before it had actually purchased the truck at the foreclosure sale without accounting therefor to cross-complainants. While the statute permits the seller to bid and become a purchaser at such sale, still his acts must be closely scrutinized the same as if he were a mortgagee or a creditor in a deed of trust, and he will not be permitted to abuse his trust and obtain a profit out of his position in

such manner. He must be held to the same strict accountability as a trustee, mortgagee, or creditor under a deed of trust, and will not be permitted to manipulate the sale to gain such an advantage.

For these reasons we think all the assignments of error should be sustained and the decree of the Chancellor reversed.

It is contended by the complainant, Auto Company, that in any event the amount of repairs made on the truck plus the $1500 credit would amount to $2,250, but we are unable to agree with this contention. The complainant's witness, Jones, was asked to file a list of the repairs made, but he failed to do so. There is some contention that the repairs cost $200, but Miles and Eastman say that these repairs were made afterwards and that they had paid this bill. The proof shows that there was not much work done on the truck at the time of the sale, and the defendants' witness states that $50 would have put it in a good condition; hence, we think $50 should be allowed.

It results that a decree will be entered in favor of cross-complainants and against the Bill Jones Auto Company for the $750, less credits of $226.21, as found by the Chancellor; and the $50 for repairs, which leaves a balance of $473.79, with interest thereon from September 4, 1917, $264.13, making a total of $737.92, together with the cost of the cause, including the cost of the appeal, for which execution may issue.

Faw, P. J. and DeWitt, J., concur.