WHAYNE *v.* GILLIA.

5-1306                                          303 S. W. 2d 246

Opinion delivered June 10, 1957.

*John S. Mosby,* for appellant.

*Giles Dearing,* for appellee.

PAUL WARD, Associate Justice. Appellee, Roy Gillia, owned and operated a drug store on Highway No. 70, in Shelby County, Tennessee, known as Roy's Drug Store. On May 30, 1951, appellee sold his stock of merchandise and fixtures in the drug store to one A. E. Whayne, who, at the time, was an employee in said drug store. On said date appellee for $10 and other valuable considerations conveyed to A. E. Whayne said stock of merchandise and fixtures, setting forth numerous items of indebtedness against the stock of merchandise amounting to $3,595.11. In said Bill of Sale it was also stated that the First National Bank of Memphis, Tennessee held title to the fixtures in said drug store under a Conditional Sales Contract to appellee and that there was a balance due on said fixtures in the amount of $2,928.52.

Also on May 30, 1951, A. E. Whayne and his mother who is the appellant in this case executed to appellee 34 promissory notes in the aggregate amount of $6,880.43. The first note was for $100 and was due on or before June 20, 1951. The other notes [in varying sums] were due and payable monthly thereafter in successive order. At the same time A. E. Whayne and his mother executed a chattel mortgage to appellee in which they conveyed to William Walsh, as trustee, all their right and interest in the said stock of merchandise and fixtures. Said conveyance was upon condition that the signers should pay the notes heretofore described, but upon failure to pay any part of the indebtedness when it became due all of the said indebtedness would become immediately due and payable, and the said trustee would be authorized and empowered to sell said property after having first given 10 days notice by posting three notices, one of which was to be posted at the Shelby County Court House and the other two were to be posted at public places in the county. It was noted in the chattel mortgage that it was subordi-

nate to the Conditional Sales Contract to the First National Bank of Memphis.

After operating the drug store a short while A. E. Whayne was apparently unable to make the payments to appellee as they became due, and on September 7, 1951 he went into voluntary bankruptcy. From this source $695.12 was received by appellee and applied to the payment of Whayne's indebtedness. Appellee secured a release of the fixtures from the referee in bankruptcy and proceeded to foreclose his chattel mortgage. At this sale the fixtures were sold for $1,000 of which amount $58 was deducted for expenses of the sale and the balance of $942 was applied to Whayne's indebtedness.

In October 1953 appellee, Roy Gillia, filed a complaint against A. E. Whayne's mother, Mrs. Ira Mae Whayne [appellant herein], in which the facts set forth above were alleged in detail, and asked for a deficiency judgment against Mrs. Whayne in the amount of $3,-850.78 with interest at 6 per cent from May 30, 1952 until paid and for the sum of $169.22 with interest from September 30, 1953 until paid. In her answer appellant admits the execution of the notes and chattel mortgage, but alleges that her signature as a co-maker was obtained through fraud and misrepresentation. She also denied that the chattel mortgage was duly foreclosed or that the property was sold according to the laws of Tennessee. It was further alleged by appellant that it was understood between her and appellee that she was to be bound only to the extent of $2,500 and not to the full amount of the indebtedness.

On May 18, 1954, upon motion of appellee, the cause of action was transferred to the chancery court. Upon the issues above set forth there was a trial in the chancery court, and on August 8, 1956 that court entered a decree giving appellee, Roy Gillia, judgment against Mrs. Ira Mae Whayne, appellant, in the amounts prayed for as set forth above. From this decree appellant has appealed to this court for a reversal.

We deem it unnecessary to discuss all the different grounds relied on by appellant for reversal in view of the conclusions which we have reached. It is our judgment that the cause must be reversed for two reasons which are somewhat related, viz: 1. The sale of the fixtures was not fairly conducted, and; 2. Appellee having purchased the fixtures at the sale is, accountable to appellant for the fair value thereof.

1. While no actual fraud is shown in connection with the sale of the fixtures under the chattel mortgage, yet there are several incidents which convince us that appellee did not protect appellant's interest as he should have done. In Vol. 10 Am. Jur., page 883, under the title of Chattel Mortgages, in § 261 what appears to be the general rule is expressed in this language: ''If the sale is attacked, the burden is on the mortgagee to show that it was openly and fairly conducted and that the price was not so inadequate as to raise a presumption of bad faith . . .'' The record shows that appellee purchased the fixtures for $1,000 and that one year later he sold the same for $4,500 notwithstanding the fact that the fixtures had been damaged to some extent in the meantime. It further appears that only 4 or 5 people were present at the time of the sale and that the first bid offered by appellee was $800. Following this one person present offered $900. Immediately thereafter appellee had a private conversation with the last bidder and no other bids were offered except appellee's later bid for $1,000. Although appellant at that time resided in Arkansas, and still does, appellee and his attorneys knew that the Whaynes' had an attorney in Memphis, Tennessee. The record shows that on October 23, 1952 appellee caused a letter to be written to said attorney notifying him that the sale would be held on the following day—and the sale was held at 10 o'clock A. M. on October 24, 1952. The result is that appellee, at the time this suit was filed in the Circuit Court of Poinsett County, had already received a substantial portion of the indebtedness due him. Appellee chose as a forum a court of equity in this state and in so doing he is required to do equity.

The views we have expressed appear to be in harmony with the holdings of the Tennessee Courts. In the early case of *Lyon* v. *Jones,* 25 Tenn. (533), the matter of the necessity of good faith and fair dealing by a mortgagee purchaser was discussed. Among other things the court said: "The relation in which the mortgagee or creditor in a deed of trust stands to the vendor or debtor, imposes upon him the observance of fairness and good faith; and if he make an improper use of the power which he has over the trustee and over the sale, and becomes the purchaser, he will be held, in equity, as entitled to retain the property only as a security for his debt." It was said in the case of *Brown* v. *Eckhardt,* 23 Tenn. App. 217, 129 S. W. 2d 1122, at page 1133, that: "The mortgagee or creditor in a deed of trust may purchase at a trust sale if he acts with fairness in the transaction, and his title will be good." In the early case of *Wade's Heirs* v. *Harper, et al.,* 11 Tenn. 383, the Tennessee court went even further in putting the burden of fair dealing on the mortgagee purchaser. There Wade [father of appellants] had given a deed of trust to Harper. The latter, on foreclosure, bought the property, worth $4,000 for $1,000. In commenting, the court said: "We cannot distinguish the relation of Harper to this transaction, from that of a commissioner of a bankrupt, where the trustee makes the sale of the assets. In such case, the commissioner has a duty to perform, to make the estate bring the best price, and cannot buy without being subject to have the sale set aside at the election of the creditors."

As we view the facts and circumstances in this case, appellee has not met the burden of showing that he in good faith tried to realize, for appellant's benefit, the full value of the drug store fixtures.

2. According to the Tennessee decisions there is some doubt as to whether a mortgagee is allowed to purchase property sold under the power of a chattel mortgage. In the *Harper* case, *supra,* the court held that the mortgagee could not, but in the case of *Brown* v. *Eckhardt, supra,* it was held that he could. The holdings in

the two cases however can be reconciled as was apparently done in the *Brown* case itself, for it was there said:

"Complainants also insist that the mere fact that defendant Eckhardt became the purchaser at the sale is sufficient to set the sale aside since he was the holder of the debt secured by the deed of trust. This on the theory that under these circumstances he became a *quasi* trustee for complainants and must account for the actual value of the land, not being authorized to bid at the sale." (citing cases) "It is only necessary to say that in these cases it does not appear that the holders of the debt were authorized by the mortgages or deeds of trust to bid at the sale. It was no doubt to meet the holding of these and other similar cases that clauses were inserted in mortgages and deeds of trust allowing mortgagees and holders of debts secured by trust deeds to bid and become purchasers at sales held under the instruments."

Following the above the court noted that the deed of trust under consideration contained a provision giving the creditor a right to bid at any sale held under the trust conveyance.

We have examined the chattel mortgage in the case before us and it contains no provision authorizing appellee to purchase at the sale. It is also pointed out here that, as shown by the record, the trustee in the chattel mortgage here was selected by appellee and was his regular attorney.

In either event, whether appellee failed to show he acted in the best interest of appellant or whether he had no right to purchase the fixtures at the sale, he will be held to have taken possession of the fixtures as a trustee for the appellant and must account for their fair value. Fortunately in this instance, the value of the fixtures has been fixed at $4,500, which is the price he admits receiving for them a year later.

Taking as true the figures set out in appellee's complaint, and charging him with $4,500 less $942 [which is the amount bid at the sale and applied on the indebted-

ness] we find that he is entitled to judgment against appellant in the sum of $1,019.46. The cause is therefore reversed with directions to the trial court to enter a decree in accordance with the above.