Beese, J.
delivered the opinion of the court.
About the 1st of March, 1840, Alexander Patton and Wm. Taylor were and had been merchants and partners in trade in the town of Jackson, extensively engaged in business, making heavy purchases of goods on credit, and large sales in the same manner. In the course of these operations they became indebted to the Branch of the Union Bank at Jackson, for money loaned, and bills purchased by the Bank. The amount of their indebtedness to the Bank at the time indicated was about, the sum of one hundred and fifteen thousand dollars, for which the' *613 Bank had the security of the endorsement of some three or four individuals. But these individuals were indebted to the Bank on their own account and as endorsers for others, in such amounts, as to render their security upon the paper of Patton & Taylor of no great value to the Bank. At this time Patton & Taylor were indebted, as appears, to others in about the sum of one hundred thousand dollars, and they had effects, choses in action, &c. of the nominal value of one hundred and-fifteen thousand dollars; and Patton had real estate and slaves, belonging to him individually, worth sixty thousand dollars. Under these circumstances, with a view to release the endorsers upon the paper of Patton & Taylor, due the Bank, to strengthen the security of the Bank for the ultimate payment of the firm debts, and to leave-the active capital of Patton & Taylor to be managed by them for their own benefit and that of their creditors at large, it was agreed that Patton should convey to trustees on behalf of the Bank, the real estate and slaves referred to, and that the firm should convey real estate amounting to a few thousand dollars. Accordingly, on the 3d of March, 1840, the said Patton & Taylor made their mortgage and trust deed to the defendants, Caruthers and Campbell, in behalf of the Bank for the slaves, and real estate referred to, to secure to the said Bank one hundred thousand dollars, a part of said debt, leaving fifteen thousand dollars or upwards at large. And the portion of said mortgage and trust deed which sets forth and declares the trusts of the instrument is as follows:
“But the' foregoing is in trust and for the purposes hereinafter declared- — that is: whereas, the said Alexander Patton and William Taylor are indebted to the office of the Union Bank at Jackson, in the sum of one hundred thousand dollars, for which they have given their note, by the name and style of Patton & Co'., bearing even date herewith, payable twelve months after the date thereof, to John W. Campbell, Cashier, at the Union Bank of the State of Tennessee, at Nashville. Now, if the said A. Patton and W. Taylor shall pay off and discharge said note at maturity according.to the tenor and effect thereof, then this conveyance to be void and of no effect, otherwise to remain in full force and virUire. Provided, also, if the said A. Patton *614 and W. Taylor shall pay twenty thousand dollars thereon at maturity, and renew their note for the residue of said debt, paying the discount on the renewal, they shall be permitted to do so, this conveyance continuing in force as security for the part unpaid. And the said Patton & Taylor shall have leave to renew annually, on the payment at each renewal of twenty thousand dollars of the principal and the discount on the residue unpaid, so as fully to discharge said debt and interest which may accrue in five annual payments, this conveyance remaining in full force as a security until the entire debt and interest, which may accrue, shall have been discharged.” And the deed then goes on to provide, that “if Patton & Taylor should at any time fail in the above particulars, then Campbell and Caruthers, the trustees, should take said property into possession (the said P. & T. in the mean time being permitted to remain in the possession at the discretion of the trustees) and sell the same,” &c. The object of the bill is to set aside the mortgage and trust deed, and to let in the complainants in this bill and other creditors of Patton & Taylor to participate fro rata, for the satisfaction of their judgments, in the proceeds of the property conveyed. They place their application mainly upon two general grounds.
1st. That the Bank had no power under the provisions of its charter to take the security in question.
2dly. That the deed should be held to be fraudulent and void against other creditors, either by operation of the facts and circumstances attending its execution, or by construction of law.
As to the first question, the 7th article of the 10th section of the Bank charter provides, that in addition to the lands which the corporation may hold for its immediate accommodation, it shall be lawful to hold such other lands “as shall have been Iona fide mortgaged to it by way of security, or conveyed in satisfaction of debts.” Then the corporation may hold land in three modes.
1st. Small portions, permanently, for its immediate accommodation.
2dly. Lands held in security for debts; and
*615 3dly. Lands taken absolutely in payment and satisfaction of them.
The land in controversy was taken in security for a debt due the.Bank. But it is said that the form of the security is not that of mortgage, and that form is mentioned in the statute. If this argument as to form, this hceret in cortice, were true in fact, it would not greatly commend itself to our approbation. It may be asked, however, what is a mortgage? It is a conveyance of property to secure the payment of a debt due or to become due, or the re-payment of a sum borrowed. Such is the instrument before us, and the power which an instrument may confer on the mortgagee or a trustee, to sell on default made, without foreclosure in a Court of Chancery, does not change or destroy either its name or character of a mortgage. The power of foreclosure still belongs to the court, if the parties choose not to act on their own powers to sell, and invoke its exercise. See 4 Kent 139, 140, 141, 174. There is no defect then in the legal faculty of the Bank to take and hold the security in question.
2dly. Is the deed fraudulent in fact or in law? As to fraud in fact, there is no color or pretence whatever, that it attaches Iq the transaction. At the moment of the arrangement, Patton & Taylor were merchants, enjoying a full measure of public confidence, and they believed, and induced the agents of the Bank-to believe, that the arrangement entered into, would enable them to sustain themselves in their business, and to meet their'engagements to the bank and to other creditors. The bank by the arrangement did not cover all their effects; on the contrary, it left their active means unaffected, to the nominal amount of $150,000. It did not take a security too large for the debt. It left out of the security altogether fifteen thousand dollars and upwards, and the $100,000 sought to-be secured, embraced property worth not more than $65,000 or $70,00. It turned out afterwards, and indeed very shortly, that the members of the firm, like many others of that period, had overestimated the value and availability of what they called their active means, many indebted to them not being able to pay: upon discovering which, they transferred and assigned all their *616 effects and choscs in action to creditors other than the bank, and including the complainants; and the proceeds arising under said tranfer and assignment, applicable and applied to the payment of those creditors, have amounted to fifty thousand dollars, and from five to seven thousand dollars more are expected to arise; while the bank has not received more than the one-half of its debt. So we repeat, that there is upon the record no evidence whatever of fraud in fact.
The next inquiry is, as to whether artificial or legal fraud, arising upon the face of the instrument and by construction of it, shall be held to exist and to avoid the deed. It may be remarked in general, that as to this species of fraud, so far as well considered cases may have authoritatively determined the in-dicia of its existence and the grounds of its application, we are content to follow them. But. where a transaction has arisen in good faith, and been free from all fraud and covin in fact, we shall be slow to introduce new heads- of legal construction, by which to avoid the solemn deeds and assurances of men. The point of attack upon the deed before us is the length of time given to the grantor; and if the objection upon that mere ground be tenable in such a case ag this, it will be difficult for a creditor hereafter, in whose hands a large debt.has accumulated, to make an arrangement with his debtor, by which to breakup its mass into instalments so that the talents and' the means of the debtor may be successfully applied to his extrication; but he must let the whole fall at once like an avalanche upon the ruined debtor, and at the imminent hazard of loss to himself. Undoubtedly time is a circumstance not to be overlooked, in considering the fairness of an instrument taken to secure a debt. If all the property of the debtor or a greater portion of it be included in the assurance, and if its value be greatly or considerably beyond the amount of the debt to be secured, then the period of indulgence to the debtor becomes important to other creditors, because to the surplus beyond the grantee’s claim they must look for the satisfaction of their demands. But if the deed leave out a large portion of the debtor’s means, and the value of the property included in it does not exceed, or falls short of the amount of the debt to be secured by it, *617 there being no surplus in which other creditors have an interest — time, if not an immaterial circumstance, ceases at least to be a decisive one, and would not of itself in such a case justify the avoidance of the assurance. So on the other hand, the inclusion in the security of considerably more property in value than the-amountof the creditor’s claim, would not be a decisive circumstance in the creation of constructive fraud, if the time of indulgence in the assurance were usual and reasonable; because, although in that case the other- creditors would be interested in the surplus, still as the time of the delay was reasonable and usual, the deed, by the inclusion of such excess, would not upon its face manifest a purpose to hinder or delay creditors. But if both these circumstances concurred; if the excess in the value of the property over the debt were considerable, and the time of indulgence long, the evidence of a fraudulent purpose on the face, of the instrument would become greater, and that evidence would become more and - more pregnant in proportion as the excess in value were increased, and the time of indulgence prolonged. These are the two elements, conjointly operating, which mainly entered into the consideration ofthe court, and controlled its decision in the case of Mitchell vs. Beal, 8 Yergv 134. That case was properly decided upon the facts shown in that record; but that case differs from this, greatly. All the property of the debtor seems to have been included. That property was twice the value ofthe debt secured; the time of indulgence was three years; no annual payments stipulated for; the possession and use of the property for that time expressly reserved to the debtors, and put beyond the control of the trustees, and power given them to sell it on a credit of three years, with no other restriction, but that they should pay the proceeds to the trustee; and there was a further advance by the creditor to the debtors. But-here-the debtors left out of the deed a large portion of their means, from which fifty thousand dollars have been realized by other creditors. The value of the property not only did not exceed the amount of the debt, but fell short of their entire debt forty-five or fifty thousand dollars, and fell short of the debt named in the deed thirty or thirty-five thousand dollars. The annual payment of twenty *618 thousand dollars is required, with the interest on the residue; in default of which the property was to be sold. So we cannot say, looking to the face of the instrument, that we see in deed a purpose to hinder or delay other creditors, or that its legal effect would have been wrongfully and improperly to have done so. It is said, if Patton & Taylor had complied with their engagement, that the effect would have been, that although for more than half the time the security would have been inadequate, for the latter half, it would have been too large. But we have already said, that some excess in value is not material when the time is not great; and moreover we do not feel called on to be laboriously astute and subtle in search of hypotheses by which to discover that that which began honestly might in the end be applied to dishonest uses, and so avoid a solemn assurance. The contrary is our duty — to let it stand if it seem fair and honest.
In the event supposed, the creditors would not have been without their remedy of substitution or otherwise.
Let the decree of the Chancellor be affirmed.