**CADENCE BANK, N.A., Plaintiff,**

v.

**LATTING ROAD PARTNERS, LLC, William D. Miller, and William R. Hyneman, Defendants.**

**Case No. 09–2540.**

United States District Court, W.D. Tennessee, Western Division.

March 2, 2010.

---

Kenneth P. Jones, Lancelot L. Minor, III, Bourland Heflin Alarez Minor & Matthews, Memphis, TN, for Plaintiff.

ALLAN J. WADE, Brandy S. Parrish, J. Gordon Howard, Allan J. Wade, PLLC. Memphis, TN, for Defendants.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BERNICE BOUIE DONALD, District Judge.

Before the Court is Plaintiff Cadence Bank, N.A.'s ("Cadence Bank") motion for summary judgment against all defendants filed on October 28, 2009. (D.E. # 12.) Defendants Latting Road Partners, LLC, William D. Miller, and William R. Hyneman (collectively, "Defendants") filed a response in opposition on January 13, 2010 after the Court allowed the parties time under Rule 56(f) of the Federal Rules of Civil Procedure to conduct limited discovery related to the issues raised in Cadence Bank's motion for summary judgment. Cadence Bank filed a reply on February 11, 2010. For the reasons stated herein, the motion for summary judgment is **GRANTED,** and judgment shall enter in favor of Cadence Bank.

## I. BACKGROUND

### A. Facts Related to Deed of Trust and Foreclosure

■ This case arises from a foreclosure action undertaken by Cadence Bank on real property located in Davidson County, Tennessee. On or about March 31, 2006, Defendant Latting Road Partners, LLC ("Latting Road") signed a Construction Promissory Note ("Note") and thereby obtained $5,000,000.00 from Cadence Bank. (Ex. A to Pl.'s Mot. for Summ. Judgment: Decl. of Frazer Gieselmann ("Gieselmann Decl.") ¶ 2.) A Construction Deed of Trust ("Deed of Trust")[1] executed by Latting Road in favor of Cadence Bank on the Davidson County property secured the Note. (*Id.* ¶ 3.) The Deed of Trust was dated March 31, 2006 and filed of record in the Davidson County Register of Deeds as Instrument No. 20060404–0038226. (*Id.*) Also on March 31, 2006, Latting Road and Cadence Bank entered into a Construction/Development Loan Agreement ("Loan Agreement"). (*Id.* ¶ 5.) Latting Road's

---

1. A deed of trust is "an instrument in use in many states, taking the place and serving the uses of a common-law mortgage, by which the legal title to real property is placed in one or more trustees, to secure the repayment of a sum of money or the performance of other conditions." *Black's Law Dictionary* 503 (4th ed. 1968) ("Deed of Trust") (citations omitted); *see Bennett v. Union Bank,* 24 Tenn. 612 (1845).

debt to Cadence Bank under the Note and Deed of Trust was extended by two Extension and Amendment Agreements and by a First Modification and Extension Agreement dated March 24, 2009. (*Id.* ¶ 4.)

Defendant Miller serves as Chief Manager of Latting Road, while Defendant Hyneman is a member of the Latting Road limited liability company. (*Id.* ¶ 6.) Along with the execution of the Note, Deed of Trust, and Loan Agreement on March 31, 2006, Messrs. Miller and Hyneman executed Limited Guaranty Agreements ("Guaranties") making themselves jointly and severally liable for the amount owed by Latting Road to Cadence Bank along with interest, expenses, attorney fees, and costs of collection. (*Id.; see* Ex. E to Gieselmann Decl.)

Latting Road subsequently failed to make monthly installment payments to Cadence Bank and thereby breached its obligations under the Note, Deed of Trust, and other agreements. (*Id.* ¶ 7.) Although Cadence Bank demanded that Latting Road as well as Messrs. Miller and Hyneman repay the Note, the Note was not repaid. (*Id.*) Cadence Bank then accelerated the full balance of the loan and demanded, to no avail, that Messrs. Miller and Hyneman pay the outstanding debt as guarantors. (*Id.*) Because of the default on the Note, Cadence Bank foreclosed on the property that was the subject of the Deed of Trust and conducted a foreclosure sale of the subject property at a public auction on August 18, 2009. (*Id.* ¶ 9.) Having submitted the highest bid at the auction, Cadence Bank purchased the property for $715,000.00. (*Id.*)

The outstanding balance owed on the Note as of August 17, 2009, including accrued interest, was $2,687,279.90. (*Id.* ¶ 10.) Moreover, because Defendants had failed to pay property taxes on the property, Cadence Bank was obliged to pay back taxes in the amount of $32,024.71 for 2007 and $12,104.25 for 2008. (*Id.*) After giving Defendants credit for the amount of the foreclosure bid and including the unpaid interest accrued through August 17, 2009, the total deficiency balance due Cadence Bank equals $2,016,408.86. (*Id.*) Additionally, the Note continues to accrue interest at the rate of $220.74 per diem, and Cadence Bank continues to incur attorney fees and costs. (*Id.*) On August 19, 2009, Cadence Bank filed a verified complaint against Defendants in the United States District Court for the Western District of Tennessee seeking $2,016,408.86 as well as accrued interest, late charges, attorney fees, expenses, costs, and postjudgment interest.[2]

## B. Facts Related to Appraisals of Property

According to the deposition of Frazer Gieselmann,[3] a senior vice president at Cadence Bank, the property at issue has been appraised several times. An appraisal conducted on April 15, 2008 placed the value of the property at $1,470,000.00. (Ex. 2 to Defs.' Resp. in Opp. to Pl.'s Mot. for Summ. Judgment: Deposition of Willis Frazer Gieselmann ("Gieselmann Depo.") 21–23; *see* Ex. 8 to Gieselmann Depo.) After notifying Defendants of their default in 2009 but before the foreclosure sale, Cadence Bank commissioned another ap-

---

**2.** As evidenced by the verified complaint and answer filed by the parties, Cadence Bank is a national bank existing under federal law with its main office located in Mississippi, while Defendants are each residents of Tennessee. The parties being diverse and the amount in controversy being more than $75,000, juris-

diction in this Court is proper pursuant to 28 U.S.C. § 1332.

**3.** Defendants deposed Mr. Gieselmann on January 22, 2010 as Cadence Bank's designee under Fed.R.Civ.P. 30(b)(6).

praisal, which placed—as of August 12, 2009—a market value on the property at $1,100,000.00 and a liquidation value based on a marketing period of ninety days or less at $605,000.00. (Gieselmann Depo. 24–25; *see* Ex. 9 to Gieselmann Depo.) Pursuant to standard Cadence Bank policy, the August 12th appraisal was independently reviewed. (Ex. to Pl.'s Reply to Defs.' Resp. to Pl.'s Mot. for Summ. Judgment: Second Decl. of Frazer Gieselmann ("Second Gieselmann Decl.") ¶ 4.) Because Cadence Bank was in the process of changing its independent reviewer for all appraisals to a company known as CES, the August 12th appraisal received two independent reviews. (Gieselmann Depo. 32; Second Gieselmann Decl. ¶ 4.) The first review, which was conducted by a reviewer other than CES, approved of the August 12th appraisal, but the second review, conducted by CES, rejected it. (Gieselmann Depo. 27–33; *see* Exs. 10–11 to Gieselmann Depo.) Following CES's rejection of the appraisal, a third appraisal determined that the property possessed a liquidation value of $500,000 and a market value of $700,000.[4] (Gieselmann Depo. 33–34; *see* Ex. 12 to Gieselmann Depo.) Cadence Bank currently intends to accept an offer made by an individual in Nashville to purchase the subject property for $585,000.00. (Second Gieselmann Decl. ¶ 5.)

## II. LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Scher-*

*ing–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir.1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thaddeus–X v. Blatter*, 175 F.3d 378, 400 (6th Cir.1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir.2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2727 (3d ed. 1998).

Once a properly supported motion for summary judgment has been made, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). A genuine

4. Defendants incorrectly assert that this third appraisal found the value of the property in September 2009 to be $1,440,000. (*See* Ex. 12 to Gieselmann Depo.)

issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348.

## III. ANALYSIS

### A. Tennessee Law on Deficiency Judgments Following Foreclosures[5]

■ Generally, when real property has been foreclosed upon and the foreclosure does not satisfy the amount of the financial obligation for which the property was security, the foreclosing party is entitled to a deficiency judgment against the party liable on the underlying obligation. *See* Restatement (Third) of Property (Mortgages) § 8.4 (1997). "Foreclosure proceedings extinguish the mortgage debt when the proceeds of the foreclosure sale equal or exceed the debt and related costs. Accordingly, a mortgagee who bids in the full amount of the debt at the foreclosure sale accepts the property itself in full payment of the underlying debt, while a mortgagee who bids in less than the full amount of the debt retains its status as a creditor with regard to the deficiency." *First Investment Co. v. Allstate Ins. Co.,* 917 S.W.2d 229, 231 (Tenn.Ct.App.1994).

■ Under certain circumstances, the party to be held liable may properly avoid or reduce the amount of the deficiency judgment to be awarded by challenging the foreclosure sale. *Duke v. Daniels,* 660 S.W.2d 793, 795 (Tenn.Ct.App.1983). In a suit for a deficiency judgment, Tennessee courts apply the following rules:

(1) the value of the property sold is not looked to in a deficiency case unless there is a charge of fraud in the manner of sale or a charge that the sales price was grossly inadequate; (2) in the absence of an allegation of irregularity in the sale, there is a presumption that the price brought at the public sale is the fair market price of the property; and (3) where gross inadequacy is claimed, the burden of overcoming the presumption attached to a sale free of irregularity is on the defendant against whom a deficiency judgment is sought.

*Lost Mountain Development Co. v. King,* No. M2004–02663–COA–R3–CV, 2006 WL 3740791, at *5 (Tenn.Ct.App. Dec. 19, 2006) (citing *Duke,* 660 S.W.2d at 795); *see also id.* at *11 (affirming continued validity of *Duke* principles for analysis of deficiency judgment cases).

■ It is the value of the property at the time of the foreclosure sale, not its value prior or subsequent to the sale, that is relevant. *Id.* at *6 (quoting *Brown v. Eckhardt,* 23 Tenn.App. 217, 129 S.W.2d 1122, 1128 (1939)). Absent "'some evidence of irregularity, misconduct, fraud or unfairness on the part of the trustee or mortgagee[,]'" Tennessee law accords conclusive effect to the price produced through the foreclosure sale, "[e]ven where the sale price is shockingly disproportionate to the actual value of the property[.]" *Orlando Residence, Ltd. v. Nashville Lodging Co.,* 104 S.W.3d 848, 855 (Tenn. Ct.App.2002) (quoting and citing (*Holt v. Citizens Central Bank,* 688 S.W.2d 414, 416 (Tenn.1984) and citing *Duke,* 660 S.W.2d 793)). This principle, however, is subject to one caveat. If the property is sold in foreclosure at a grossly inadequate price, the party to be charged with a defi-

---

5. The parties contend and the Court agrees that Tennessee substantive law governs this case.

ciency judgment may contest the sale price and limit the amount of the deficiency to be assessed. *See Lost Mountain Development Co.*, 2006 WL 3740791, at *7. Such a challenge does not seek to set aside the foreclosure sale or otherwise affect the legal interests of third-parties who possessed no relationship to the original mortgage or deed of trust. *See id.* at *11 (Cain, J., concurring) (noting that court's holding is limited to disputes between original parties to the mortgage or deed of trust and does not affect suits concerning the validity of a purchaser's title to foreclosed property). Because the instant case does not concern the interests of third-parties and only extends to determining the value of the deficiency judgment that Cadence Bank may obtain, the question for the Court is whether the sale price obtained at the foreclosure sale was grossly inadequate.

## B. Gross Inadequacy

Cadence Bank moves for summary judgment, arguing that the evidence indisputably establishes Defendants' liability. After receiving credit for the $715,000.00 obtained from the foreclosure sale, Defendants' indebtedness to Cadence Bank totals $2,016,408.86, an amount for which Cadence Bank argues that Defendants are jointly and severally liable. Therefore, Cadence Bank seeks a judgment in the amount of $2,016,408.86 plus interest, attorney fees, and costs—each of which is recoverable under the terms of the parties' written agreements. Defendants oppose Cadence Bank's motion for summary judgment, asserting that there exists a genuine

issue of material fact concerning the adequacy of the price for which the property was sold.[6]

Defendants have not pointed to any evidence indicating irregularity, fraud, or misconduct on the part of Cadence Bank in conducting the foreclosure sale on the subject property. Defendants' sole argument is that Cadence Bank's foreclosure sale yielded an unfair purchase price. Rather than submit evidence from their own appraisal expert as to the value of the property at the time of the foreclosure sale, Defendants rely upon Mr. Gieselmann's deposition testimony concerning the various appraisal values placed upon the property. By itself, however, the simple fact that Cadence Bank received a range of appraisal values for this property is not directly relevant to the question the Court must address, which is whether the foreclosure sale price was so grossly inadequate as to overcome the legal presumption that the price obtained through a foreclosure sale fairly represents the value of the property at the time of the sale—an issue on which Defendants bear the burden of proof. *See Lost Mountain Development Co.*, 2006 WL 3740791, at *5. The Court is thus not called upon to ascertain the precise value of the property *de novo*, nor must Cadence Bank independently establish the value of the property at the time of the sale. *See, e.g., Duke*, 660 S.W.2d at 795 ("A reading of the final decree shows that the Chancellor was of the opinion that there was a burden on the plaintiff to prove the value of the property over and above the presumption that ac-

---

6. Defendants do not contest Cadence Bank's position that Defendants are liable for breaching their agreements. Defendants also do not directly contest the amount of their liability, though their response brief states that Cadence Bank's own documents show that the loan balance as of August 17, 2009 was really $1,347,695.26 rather than $2,016,408.86. As

Cadence Bank points out, however, $1,347,695.26 is simply the amount to which the value of the loan had been written down for purposes of internal accounting and does not represent the outstanding balance actually owed by Defendants. (Second Gieselmann Decl. ¶ 3.)

companies a validly conducted sale. Unless the sale was improperly had, that burden is not on the plaintiff."). Instead, the Court need only determine whether the record contains evidence to support Defendants' allegations of gross inadequacy.

■ Having considered all of the evidence in the light most favorable to Defendants as the nonmoving parties, the Court finds that the range of appraisal values discussed in Mr. Gielselmann's deposition does not support Defendants' position that the foreclosure sale generated a grossly inadequate sale price and was therefore unfair. To the contrary, some appraisal values submitted to Cadence Bank were lower, and therefore the price obtained at the foreclosure sale fell squarely within the range of values for the property. Indeed, Cadence Bank purchased the property for sixty-five percent of the highest value placed on it by the appraisals contemporaneous to the foreclosure (*viz.*, $1,100,000.00).[7] The fact that some appraisals suggested a higher value for the property than what Cadence Bank paid is also not controlling, as Tennessee law recognizes that "property often brings only one-half its true value at a forced sale under the best of circumstances." *Holt v. Citizens Central Bank*, 688 S.W.2d 414, 416 (Tenn.1984) (citation omitted). Moreover, the evidence before the Court is that Cadence Bank intends to sell the subject property for less than the price it paid at the foreclosure sale—a loss Cadence Bank that admits it is precluded from recovering from Defendants. Therefore, there exists no triable issue of material fact concerning Defendants' allegation of gross inadequacy, and Cadence Bank is entitled to summary judgment.

### C. Damages

Pursuant to the terms of the Note and related agreements, Defendants are liable for a deficiency judgment of $2,016,408.86 plus $43,485.78 in prejudgment interest, which has accrued at the rate of $220.74 per diem from August 18, 2009 to March 2, 2010.[8] The Note also provides for recovery of attorney fees and costs, and Cadence Bank may seek this relief following entry of judgment by a motion pursuant to Fed.R.Civ.P. 54. Finally, the Court awards postjudgment interest to be calculated at the rate set by 28 U.S.C. § 1961. *See Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir.2002) (citations omitted) (stating that postjudgment interest is mandatory under 28 U.S.C. § 1961).

### IV. CONCLUSION

For the reasons stated above, Cadence Bank's motion for summary judgment is **GRANTED**, and the Court awards Cadence Bank a judgment against Defendants jointly and severally in the amount of $2,059,894.64 plus attorney fees, costs, and postjudgment interest. Judgment shall enter accordingly.

---

**7.** As Cadence Bank notes, the appraisal that put the property's value at $1.47 million was not only performed nearly a year and a half before the foreclosure sale but also at time when the real estate market looked very different than it did in August 2009.

**8.** Although Cadence Bank's motion asks for interest from August 17, 2009, Mr. Gieselmann's declaration indicates that Cadence Bank has already included the per diem accrued interest for the date of August 17, 2009 in its request for $2,016,408.86. (*See* Gieselmann Decl. ¶ 10.) Accordingly, the Court begins its calculation of prejudgment interest from August 18, 2009.